IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AEROGROUND, INC. d/b/a MENZIES AVIATION, a California corporation, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 10 C 652 ) |
| v. | ) Suzanne B. Conlon, Judge ) |
| CENTERPOINT PROPERTIES TRUST, a Maryland Investment Trust, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aeroground, Inc. d/b/a Menzies Aviation ("Menzies") sues CenterPoint Properties Trust ("CenterPoint") for breach of a lease agreement and fraudulent inducement. Centerpoint moves to dismiss the fraudulent inducement claim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons set forth below, the motion is granted.

### BACKGROUND

The following facts are derived from Menzies' complaint and accepted as true for purposes of this motion. Menzies is one of the largest providers of air cargo handling services in the world, operating at over 100 airports in 27 countries. In 2006, Menzies was informed that its three Chicago-based facilities would be condemned in connection with a planned expansion of O'Hare International Airport. In light of O'Hare's status as one of the nation's largest airports, Menzies' Chicago facilities are a critical component of its operations.

In anticipation of the condemnation, Menzies began searching for a facility where its Chicago operations could be consolidated into a single location. CenterPoint held out its

property at 10801 West Irving Park Road in Chicago ("the premises") as an ideal location for Menzies' operational needs. On November 1, 2007, the parties entered into a ten-year lease agreement permitting Menzies to use the premises as an "air cargo handling and storage" facility for approximately $2 million in annual rent. *See* Comp. Ex. 1 (copy of agreement). Menzies completed its relocation to the premises in March 2009.

Shortly thereafter, the premises' concrete slab foundation began to visibly deteriorate, hampering Menzies' operations and leading to numerous customer complaints. The Occupational Safety and Health Administration ("OSHA") inspected premises and found that Menzies' employees were exposed to trip and fall hazards due to cracks in the concrete. OSHA fined Menzies $4,500 and ordered the concrete be immediately repaired. CenterPoint attempted to repair the worst affected areas, but its efforts proved inadequate. The concrete began cracking and spalling within a month of the repairs. In September 2009, after Menzies retained its own consultants, a ground-penetrating radar survey revealed that the premises' concrete foundation was of variable thickness and inadequate to support an air cargo and storage facility. The ongoing deterioration of the concrete surface has interrupted Menzies' business operations and rendered portions of the premises unusable.

In January 2010, Menzies filed a complaint against CenterPoint for breach of the lease agreement (Count One) and fraudulent inducement (Count Two). Menzies alleges CenterPoint has breached the lease agreement by tendering a premises unfit for its intended use and failing to repair and maintain the concrete foundation and structure. Menzies also asserts that CenterPoint fraudulently induced it to enter into the lease agreement by falsely representing that the premises was fit for use as an air cargo handling and storage facility, and by failing to disclose latent

structural defects. CenterPoint's motion to dismiss pertains only to the fraudulent inducement claim.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests a complaint's sufficiency, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts all well-pleaded allegations as true and draws all reasonable inferences in Menzies' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Factual allegations in the complaint must be sufficient to state a claim to relief that is facially plausible, rather than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim is facially plausible when the factual allegations allow the court to draw a reasonable inference that CenterPoint is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In considering CenterPoint's motion to dismiss, the court also looks to the lease agreement itself, as it is attached to the complaint and central to Menzies' claims. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Where Menzies' allegations are inconsistent with the terms of the lease agreement, the agreement trumps the allegations. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1999).

Generally, a complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of each claim. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 554-55. Allegations of fraud, however, are subject to Rule 9(b)'s heightened pleading standard and must be pled with particularity. Fed. R. Civ. P. 9(b). Menzies must identify the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which it was communicated. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d

3

771, 777 (7th Cir. 1994); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (Rule 9(b) particularity means "the who, what, when, where, and how: the first paragraph of any newspaper story").

## DISCUSSION

CenterPoint argues the fraudulent inducement claim should be dismissed because Menzies failed to plead fraud with particularity as required by Rule 9(b), and because Menzies cannot, as a matter of law, establish all the elements of the claim in light of the lease agreement's unambiguous provisions. Under Illinois law, a plaintiff must plead the following elements to sustain an action for fraudulent inducement: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the statement's truth; and (5) damage to the other party resulting from such reliance.[1] *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

To the extent Menzies' fraudulent inducement claim is predicated on statements made prior to the signing of the lease agreement, it must be dismissed for failure to comply with Rule 9(b). During Menzies' search for a new facility, CenterPoint allegedly made representations about the suitability of its property, such as holding "out its facility as an ideal space for Menzies' operations and explicitly proffer[ing] the premises for use as an 'air cargo handling and storage' facility," and characterizing the premises "as the perfect location for Menzies' relocation and operational consideration." Comp. ¶¶ 2, 11. The complaint does not identify the person who made these statements or describe the circumstances under which the statements were made with the specificity required by Rule 9(b). Drawing reasonable inferences in Menzies' favor, the

---

[1] The parties agree that Illinois law controls the dispute pursuant to a choice-of-law clause in the lease agreement.

4

alleged statements are nothing more than sales "puffery," not false statements of material facts. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (puffery is not actionable as fraud).

Menzies argues the requisite "who, what, when, where, and how" is found in the lease agreement itself. In other words, by limiting Menzies' use of the premises to an "air cargo handling and storage" facility, CenterPoint's signatories to the lease agreement fraudulently misrepresented that the property was fit for that particular use. But a lease provision permitting a particular use is not the same as an express representation that the property is fit for a particular use. Menzies does not point to any affirmative representation in the lease agreement regarding the condition of the premises. Menzies' argument also squarely contradicts the lease agreement's unambiguous terms. The agreement contained the following relevant provisions:

> **Section 2.3** **Disclaimer Regarding Premises**. Subject to Landlord's obligation to perform the Punch List Work as provided in Article XXXIII below, *Tenant agrees to accept the Premises in an absolutely "as is" condition, and Tenant acknowledges that Landlord, its agents, attorneys, representatives and employees have not and do not make any representations or warranties, express or implied, to Tenant regarding the Premises* or the Project.
>
> \*\*\*\*\*\*\*\*\*
>
> **Section 33.2** **Acceptance of the Premises**. Subject to the obligation of the Landlord to perform the Punch List Work, *Tenant accepts the Premises in its "as is" condition* and Landlord shall not have any obligation to perform any improvements at the Premises.
>
> \*\*\*\*\*\*\*\*\*
>
> **Section 34.19** **Entire Agreement**. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged into this Lease, the exhibits annexed hereto and the instruments and documents referred to herein, which alone fully and completely express their agreements, and that no party hereto is relying upon any statement or representation, not embodied in this Lease, made by the other. *Each party expressly acknowledges that, except as expressly provided in this Lease the other*

5

> *party and the agents and representatives of the other party have not made, and the other party is not liable for or bound in any manner by, any express or implied warranties, guaranties, promises, statements, inducements, representations or information pertaining to the transactions contemplated hereby.* Nothing contained in this Section 34.19 shall void the Lease Termination Agreement of even date herewith between Landlord and Tenant.

Comp. Ex. 1 at 6, 44, 47 (emphasis added). The terms of the agreement, willingly entered into by two commercially sophisticated parties, clearly show that Menzies leased the premises "as is," with the understanding that CenterPoint was not making any express or implied representations as to the premises' condition. Sophisticated parties "know how to say what they mean;" the court must enforce unambiguous terms as they are written. *ConFold Pacific, Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 955 (7th Cir. 2006). Menzies' assertion that the lease agreement contains a false statement of material fact (that the premises were fit for Menzies' intended use) is contradicted by the agreement's express terms.

Besides allegations of active fraud, Menzies' complaint alleges CenterPoint fraudulently failed to disclose a key fact regarding the condition of the premises; the latent defect in the concrete. Under Illinois law, CenterPoint's failure to disclose a material fact may constitute fraudulent concealment, but only if it owed Menzies a duty to disclose that fact. *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358, 1366 (N.D. Ill. 1996) (Alesia, J.). Whether such a duty exists is a question of law. *Equity Capital Corp. v. Kreider Trans. Serv., Inc.*, 967 F.2d 249, 253 (7th Cir. 1992). The duty to disclose arises only when a fiduciary relationship is present or when the defendant's acts contribute to the plaintiff's misapprehension and the defendant intentionally fails to correct the plaintiff. *PXRE Reinsurance Co. v. Lumbermens Mut. Cas. Co.*, 342 F.Supp.2d 752, 757-58 (N.D. Ill. 2004) (Shadur, J.). No fiduciary duty existed here. *Mid-West*

*Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 915 (Ill. App. Ct. 2004) ("Parties to a contract are not each other's fiduciaries"). If CenterPoint had a duty to disclose defects in the premises, that duty would have had to arise from its deceptive conduct or active suppression. *See Munjal v. Baird & Warner, Inc.*, 485 N.E.2d 855, 862 (Ill. App. Ct. 1985) (silence in a business transaction is not fraudulent unless accompanied by deceptive conduct or suppression of facts resulting in active concealment).

As with active fraud, fraudulent concealment must be pled with particularity. *Beauchem v. Rockford Prod. Corp.*, No. 01 C 50134, 2004 WL 432328, at *1 (N.D. Ill. Feb. 6, 2004) (Reinhard, J.). Because the essence of a fraudulent concealment claim is that the defendant did not disclose a material fact at any time or in any manner, a plaintiff cannot allege the "who, when, where, and how" normally required under Rule 9(b). But a plaintiff must allege facts establishing the defendant's duty to disclose. Menzies claims the fact that CenterPoint leased the premises for the sole purpose of operating a cargo facility gave rise to a duty to inform Menzies of defects in the concrete (assuming, as the court must, that CenterPoint knew of the defects). But silence is not enough to constitute fraud without some type of deceptive conduct or active concealment. *Munjal*, 485 N.E.2d at 862. The mere fact that the lease agreement provided for use of the premises as a cargo facility does not create a reasonable inference that CenterPoint engaged in fraud. As noted above, the lease agreement's terms made explicitly clear that Menzies was accepting the premises "as is" without any express or implied warranties as to its suitability. The complaint does not allege CenterPoint gave false or misleading responses to questions posed by Menzies as to the condition of the premises. Nor does the complaint allege any efforts by CenterPoint to deceive Menzies as to the premises' condition or to undermine an inquiry into the premises' suitability. Menzies has failed to plead with particularity the

7

circumstances giving rise to CenterPoint's duty to disclose. Accordingly, it has failed to state a cause of action for fraud by concealment of a material fact.

Even if Menzies' allegations satisfied Rule 9(b), CenterPoint would still be entitled to dismissal of the fraudulent inducement claim. In light of the lease agreement's unambiguous provisions, Menzies cannot establish that it reasonably relied on any alleged misrepresentations regarding the condition of the premises. *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (reliance on a misrepresentation must be justified). Reliance is normally a question of fact, but the court may determine the issue as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Id.* Menzies' fraudulent inducement claim is premised on allegations that CenterPoint misled it as to the condition of the leased property. But the lease agreement clearly disavowed reliance on representations not found in the document itself, and the agreement expressly stated that CenterPoint had not made and was not making any representations or warranties as to the premises. *See* Comp. Ex. 1 at 6, 44, 47 (§§ 2.3, 33.2, 34.19). Section 34.19 of the lease agreement amounted to a combination of a merger clause and a no-reliance clause, providing in relevant part:

> [N]o party hereto is relying upon any statement or representation, not embodied in this Lease, made by the other. Each party expressly acknowledges that, except as expressly provided in this Lease [the parties have not made and are] not liable for or bound in any manner by, any express or implied warranties, guaranties, promises, statements, inducements, representations or information pertaining to the transactions . . . .

*Id.* at 47. Contrary to Menzies' argument, the lease agreement does not embody any representation as to the premises' condition. In fact, the parties clearly agreed that CenterPoint offered no representations or warranties as to its condition. *Id.* at 6 (§ 2.3). Menzies cannot

8

plausibly claim to have justifiably relied on any purported representations after having agreed to the above terms and stating in writing that it was not relying on any statements or representations. *Vigortone Ag Prod., Inc. v. PM AG Prod., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002 (no-reliance clause inserted into a contract between sophisticated parties generally precludes a fraud suit).

## CONCLUSION

For the reasons set forth above, CenterPoint's motion to dismiss Count II of the complaint is granted.

ENTER:

May 27, 2010

Suzanne B. Conlon
United States District Judge