**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AEROGROUND, INC., d/b/a MENZIES AVIATION, a California Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 10-cv-652 |
| v. | ) ) ) | |
| | ) | Judge Sharon Johnson Coleman |
| CENTERPOINT PROPERTIES TRUST, a Maryland Investment Trust, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

Plaintiff Aeroground Inc. leased property from defendant Centerpoint Properties Trust for use in its operations as an air cargo handler. The floor of the property began to show visible signs of deterioration shortly after Aeroground took possession of the premises, and that deterioration has progressed to such an extent that the parties both believe that the floor needs replacement. Each party contends that the other is responsible for this replacement, and each contends that the other party, in failing to perform the necessary replacement, is in breach of the lease. After a trial on plaintiff's complaint and defendant's counterclaim, the court finds that neither party has proved its right to recovery by a preponderance of the evidence.

Background

Centerpoint maintained a property near Chicago's O'Hare Airport that was constructed in 1998. Until 2006, the property was used as a warehouse for airplane parts. In February 2007, Aeroground and Centerpoint entered into a lease for Aeroground's possession of the property for

use in its air cargo business. The parties terminated that lease by mutual agreement, and then signed a new ten-year lease, effective as of January 1, 2008.

The floor of the property showed no signs of deterioration before Aeroground's occupation of the premises, but Aeroground observed deterioration soon after it began operations there. The parties determined that the floor required replacement, but could not agree on the responsible party.

Lease Terms

The lease defines the "Improvements" as the building and building expansion on the property and the "Premises" as the portion of the property leased to Aeroground. The following are additional pertinent excerpts from the lease agreement.

**Permitted Uses**: air cargo handling and storage and ancillary office uses

**Section 2.3**: Tenant agrees to accept the Premises in an absolutely "as is" condition, and Tenant acknowledges that Landlord, its agents, attorneys, representatives and employees have not and do not make any warranties, express or implied, to Tenant regarding the Premises or the Project.

**Section 7.1**: Except as set forth in Section 7.2, Tenant assumes full and sole responsibility for the condition, operation, repair, alteration, improvement, replacement, maintenance and management of the Premises. Except as set forth in Section 7.2 below, Tenant agrees, at Tenant's sole cost and expense, to take good care of the Premises and keep same and all parts thereof, together with any

and all alterations and additions thereto, in good order, condition and repair, suffering no waste or injury. Except as set forth in Section 7.2., Tenant shall, at its sole cost and expense, promptly perform all maintenance and promptly make all necessary repairs and replacements, ordinary as well as extraordinary, foreseen as well as unforseen, in and to the Premises and any equipment now or hereafter located in the Premises, including, but not limited to, all floors, floor coverings, windows, glass, plate glass, ceilings, skylights, interior and demising walls, doors, electrical systems, lighting fixtures and equipment, plumbing systems and fixture, sprinkler systems, heating, ventilating and air conditioning systems, loading docks, areas and doors, rail space areas, fences and signs, connections, pipes, mains, water, sewer and connections, and all other fixtures, machinery, apparatus, equipment and appurtenances now or hereafter belonging to, connected with or used in conjunction with the Premises.

**Section 7.2.B**: Landlord shall repair and replace the exterior walls, roof and foundation of the building that is a part of the Improvements. The cost of all repairs and replacements under this Section 7.2.B shall be the sole responsibility of Landlord, except to the extent such costs arise as a result of any act or omission of Tenant or any person or entity claiming by, through or under any of them, in which event, the cost therefore shall be paid by Tenant, as Additional Rent, within ten (10) business days after Landlord bills Tenant.

**Section 7.4**: Except as set forth in Section 7.2 hereof, Landlord shall not be required to furnish any services or facilities whatsoever to the Premises. Except as set forth in Section 7.2 hereof, Tenant hereby assumes full and sole responsibility for the condition, operation, repair, alternation, improvement, replacement and maintenance of the Premises.

**Section 9.1**: In the event the Improvements shall be damaged or destroyed, in whole or in part, Landlord covenants and agrees that, unless otherwise provided in the Ground Lease, Landlord shall repair, restore or rebuild any such Improvements so damaged, injured or partially destroyed, or erect, finish and complete a like building.

**Section 19.1**: Tenant Agrees that the occurrence of any one or more of the following events shall be considered an "Event of Default" as said term is used herein . . .

If Tenant shall default in the performance of any covenant, promise or agreement on the part of Tenant contained in this Lease not otherwise specified in this Section 19.1 and such default shall continue for thirty days after notice thereof in writing by Landlord to Tenant . . .

**Section 20.1**: Upon the occurrence of any Event of Default and at any time thereafter, Landlord may, at its election, exercise any one or more of the following

described remedies, in addition to all other rights and remedies provided at law, in equity or elsewhere herein . . .

**Section 33.2**: Tenant hereby accepts the Premises in its "as is" condition and Landlord shall not have any obligation to perform any improvements at the Premises.

**Section 34.15**: This Lease shall be deemed and construed to be a "net lease" and Tenant agrees to pay all costs and expenses of every kind and nature whatsoever, ordinary and extraordinary, arising out of or in connection with the ownership, maintenance, repair, replacement, use and occupancy of the Premises during the Term of this Lease, which, except for the execution and delivery hereof, would otherwise have been payable by Landlord.

Plaintiff's Claim

Aeroground sought relief from Centerpoint for breach of the lease and for fraudulently inducing its execution of the lease. The fraudulent inducement count of its complaint was dismissed and summary judgment for Centerpoint was granted on the element of the contractual claim asserting breach of an obligation to provide premises fit for use as an air cargo facility. The remaining count of Aeroground's complaint alleged that Centerpoint breached its contractual obligation to repair the damage to the building's floor. Aeroground's motion for summary judgment on this claim was denied.

Aeroground asserts that the repair and replacement obligation applicable to the

deterioration at issue here is governed by Section 7.2.B of the lease, which makes Centerpoint responsible for the "exterior walls, roof and foundation," except to the extent that the costs arise out of Aeroground's acts or omissions. In response, Centerpoint contends that the problem areas here are governed by Section 7.1 of the lease, which, except for the specific areas identified in Section 7.2, give all repair, improvement, replacement and maintenance responsibilities to Aeroground, including but not limited to those for all floors and floor coverings.

The lease does not define "floor" or "foundation;" nor does it provide any guidance for distinguishing between the "floor" repair obligations of Section 7.1 and the "foundation" repair obligations of Section 7.2. Under Illinois law, which the parties agree governs the lease, when a contract's terms are unclear, extrinsic evidence is admissible to aid in construction. *Joy v. Hay Group,* 403 F.3d 875, 878 (7th Cir. 2005); *Harris Trust and Savings Bank v. Hirsch,* 112 Ill. App. 3d 895, 900 (1983).

The evidence presented by the parties establishes that the floor of the leased premises is an uncovered concrete slab. The slab is the surface upon which Aeroground's operations are conducted, including the movement of cargo loads with forklifts weighing 5,000, 15,000 and 30,000 pounds. Neither party presented any evidence of any intermediate substance or surface between the slab and Aeroground's forklifts, cargo, and employees. This evidence thus establishes that the slab is, in at least some respects, used in a way commonly considered to be a "floor."

Aeroground presented evidence that the slab also has a structural function: by connection to the building walls through dowel rods, it bears loads transferred from the walls. The court finds that such evidence does not negate the slab's function as a floor, and instead merely

establishes its dual nature as both floor and foundation.

Aeroground presented expert testimony that in the custom and practice of the air cargo industry, the term "foundation" is intended to include the entirety of the slab; that the term "floor" refers only to its top surface, and that landlords typically retain repair responsibility for the entirety of the slab. (Report of Leonard Kirsch, Plaintiff's Ex. # 96.) However, the parties presented no evidence of the breadth of this custom or practice, no evidence that Centerpoint's representatives knew of or shared in the asserted custom and practice, and no specific examples of the application of the custom and practice to the interpretation of contract provisions like those at issue here. Given these shortcomings and the conclusory nature of the testimony, the court assigns minimal weight to the expert's assertion that the contract would have been understood in the industry to assign responsibility for the damage at issue to Centerpoint. The court rejects the expert's conclusion that the characterization of the slab as an element of the building's foundation triggers the repair obligations of Section 7.2 and precludes those of Section 7.1 for any and all damage to the slab.

The court notes that all elements of slab damage at issue in the present dispute refer to its aspect as a floor. For example, Aeroground communicated its problem with the premises in a letter to Centerpoint containing the heading "Floor Breaking Up" and a complaint that the floor's condition was beginning to damage the tires of Aeroground's forklifts. (March 20, 2009 letter from John Redmond to Katie Michel, Defendant's Exhibit #23.) Aeroground's architectural/engineering consultant assessed "visible concrete distress from the heavy forklift traffic." (October 7, 2009 letter from Richard Reed to Philip Harnden, Plaintiff's Ex. #83; November 3, 2009 letter from Nathaniel Rende to Philip Harnden, Plaintiff's Ex. #86.)

7

No evidence presented to the court identified any fault in the slab in any function commonly understood to be an aspect of its role as the building's foundation. No communication from either party or any of their agents addressed failings of the slab in its function as a building component that supported the walls or roof. No evidence suggested that the slab was unable to maintain the building at its intended grade level. The court finds that the damage at issue was related to the slab's function as a floor. Such damage is the responsibility of Aeroground under Section 7.1, not the responsibility of Centerpoint under Section 7.2.

Aeroground contends that the parties' actions reveal that each considered the repair of the floor to be Centerpoint's responsibility. The court notes that the Centerpoint actions identified were remedial actions taken after the parties' identification of the dispute between them. These actions are more readily construed as efforts to preserve and extend a profitable customer relationship than a reflection of an ordinary-course construction of the contract, and the court assigns them minimal weight.

Section 7.1's assignment of such repair responsibility to Aeroground is apparently inconsistent with Section 9.1's assignment to Centerpoint of responsibility to repair, restore or rebuild all damages to the building. Section 9.1 is phrased in more general terms than Section 7.1, and under Illinois law, where contract provisions conflict, the more general provision must be construed to be either qualified by the more specific provision or rejected. *Grevas v. U.S. Fidelity and Guaranty Co.,* 152 Ill. 2d 407, 411 (1992). The court concludes that in the conflict between Sections 7.1 and 9.1, the former section must prevail.

Aeroground contends that under Illinois law, a landlord is presumed to bear repair responsibility for "structural" components of a building, and that contract provisions that purport

to shift such responsibility to a tenant must be plainly discernable. The company further argues that building elements are construed as "structural" not only by virtue of their construction function, but also as a result of the foreseeability and expense of their replacement. In the court's view, the lease in the present case plainly states that the default repair and replacement responsibility lies with the tenant; that the tenant is given responsibility for all repair and replacement expenses that otherwise would have been assumed by the landlord; and that the tenant's responsibility for such costs includes all costs, ordinary and extraordinary, foreseen and unforseen. The specific exception to this general assignment of repair responsibility is Section 7.2's provision that Centerpoint will bear responsibility for roof, exterior walls, and foundation. Specifically included in the assignment of repair responsibilities to the tenant are repairs and replacements "foreseen as well as unforseen" (Section 7.1) and "ordinary as well as extraordinary." (Sections 7.1, 34.15.) The court concludes that language of the lease shifts repair responsibility to Aeroground in sufficiently discernable terms to overcome any general presumption of landlord responsibility. *Rexam Beverage Can Co. v. Bulger,* 620 F.3d 718, 725-26 (7th Cir. 2010).

In summary, the court finds as a matter of fact that the damage complained of by Aeroground is damage relating to its use of the floor of the leased premises, not relating to the slab's function as a foundation. The court finds as a matter of law that responsibility for repair of such damage is assigned to Aeroground by the lease. Aeroground has failed to prove by a preponderance of the evidence its right to recover under the lease, and the court accordingly enters a verdict for defendant Centerpoint on Aeroground's breach of contract claim.

Defendant's Counterclaim

Centerpoint alleges that Aeroground, by failing to repair the slab damage, is in breach of the lease agreement. Section 20.1 of the lease grants rights and remedies to Centerpoint for an "Event of Default," and Section 19.1 of the lease plainly provides that an "Event of Default" occurs only upon Aeroground's failure to cure a breach of its obligations for thirty days after written notice from Centerpoint.

Centerpoint contends that it sent letters to Aeroground advising that Aeroground was obligated to repair the floor. (Joint Ex. #5; Defendant's Ex. #27, 37.) These communications responded to Aeroground's demands for floor repairs with statements of Centerpoint's position that floor repair was Aeroground's responsibility. None of the letters suggested in any way that Aeroground was in breach of the lease's repair obligations. Centerpoint's specific communications regarding Aeroground's then-current lease breaches were pointedly directed to Aeroground's withholding of rent payments. (May 28, 2009 letter from Sean Maher to John Redmond.)

The failure to provide such notice is not merely a technical failing under the lease; it precludes a finding of an "Event of Default." The court finds as a matter of fact that, with regard to the time period at issue in this proceeding, Centerpoint did not present Aeroground with a notice that it was in breach of an obligation to repair the floor. The court finds as a matter of law that such notice was a condition precedent to Centerpoint's exercise of its remedies under the lease agreement for failure to repair the floor. The court accordingly concludes that Centerpoint has failed to establish its right to the relief sought in its counterclaim and enters a verdict for Aeroground on that claim.

Conclusion

For the foregoing reasons, the court finds in favor of defendant Centerpoint on the complaint of plaintiff Aeroground, and finds in favor of Aeroground on the counterclaim of Centerpoint. Judgment will be entered on the verdicts.

So ordered.

April 9, 2013

_____
Sharon Johnson Coleman
District Judge